UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| BRANDON MICHAEL JEANPIERRE,<br><br>            Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>            Defendant. | **MEMORANDUM DECISION AND ORDER PERMITTING AMENDED COMPLAINT**<br><br>Case No. 2:25-cv-00290<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Brandon Jeanpierre filed this civil rights action without an attorney and without paying the filing fee.[1]  Because Mr. Jeanpierre fails to state a claim that President Trump violated his religious freedoms under federal law, he is permitted to file an amended complaint by November 6, 2025.  The court temporarily grants the motion to waive the filing fee[2] pending screening of the amended complaint, if any is filed.

**LEGAL STANDARDS**

When a court authorizes a party to proceed without paying a filing fee, it must dismiss the case if it concludes the complaint "fails to state a claim on which relief may be granted."[3]  In making this determination, courts use the standard for analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of

---

[1] (*See* Compl., Doc. No. 1; Mot. to Proceed In Forma Pauperis, Doc. No. 8.)

[2] (Doc. No. 8.)

[3] 28 U.S.C. § 1915(e)(2)(B)(ii).

Civil Procedure.[4]  To avoid dismissal under Rule 12(b)(6), a complaint must allege

"enough facts to state a claim to relief that is plausible on its face."[5]  The court accepts

well-pleaded factual allegations as true and views the allegations in the light most

favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[6]  But

courts need not accept a plaintiff's conclusory allegations as true.[7]  "[A] plaintiff must

offer specific factual allegations to support each claim."[8]

Because Mr. Jeanpierre proceeds without an attorney (pro se), his filings are

liberally construed and held "to a less stringent standard than formal pleadings drafted

by lawyers."[9]  Still, pro se plaintiffs must "follow the same rules of procedure that govern

other litigants."[10]  For instance, a pro se plaintiff "still has the burden of alleging

sufficient facts on which a recognized legal claim could be based."[11]  While courts must

make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his

---

[4] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

[5] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[6] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[9] *Hall*, 935 F.2d at 1110.

[10] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

[11] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[12] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[13]

## MR. JEANPIERRE'S COMPLAINT

Mr. Jeanpierre is the founder of a religious organization called the Black Flag.[14] He sues Donald J. Trump in his official and individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[15] and 42 U.S.C. § 1983.[16] He claims President Trump's Executive Order 14253 violates his religious freedoms under the First Amendment and the Religious Freedom Restoration Act (RFRA),[17] as well as Article 18 of the United Nations' Universal Declaration of Human Rights.[18]

---

[12] *Hall*, 935 F.2d at 1110.

[13] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[14] (Compl., Doc. No. 1 at 8.)  As Mr. Jeanpierre's complaint uses the standard civil rights form and a long form complaint, each of which have different page numbering, all citations in this order refer to the complaint's CM/ECF pagination.

[15] 403 U.S. 388 (1971).

[16] (Compl., Doc. No. 1 at 2–3, 8, 16.)

[17] 42 U.S.C. § 2000bb.

[18] (Compl., Doc. No. 1 at 12–15.)

The Black Flag is a tax-exempt religious organization with various tenets.[19]  The central tenet: Mr. Jeanpierre can do whatever he "feel[s] like doing."[20]  A "Principle of Autonomy" grants him "autonomy of mind, body, spirit, emotion, and execution of will regardless of opinion of any and all other individual(s), entity, or entities."[21]  The Black Flag prohibits prejudice and discrimination "against any member, guest, or affiliated party based on race, color, gender, sexual orientation, national origin, age, disability, or socioeconomic status."[22]  The religion "mandates recognition of systemic racism, inequity, and historical injustice," imposes "a religious duty to actively engage in dismantling systems of oppression," and requires "active engagement in outreach programs and protective measures" for marginalized or vulnerable groups.[23]

On March 27, 2025, President Trump issued Executive Order 14253, titled "Restoring Truth and Sanity to American History."[24]  As characterized in the complaint, the executive order "directs federal agencies to remove . . . 'divisive race-centered ideology' from the Smithsonian Institution and to restore monuments that have been

---

[19] (*Id.* at 8.)

[20] (*Id.* at 9.)

[21] (*Id.* at 10.)

[22] (*Id.* at 9.)

[23] (*Id.* at 9, 10.)

[24] (*Id.* at 9 (referencing and quoting Exec. Order No. 14253 ("Exec. Order"), 90 Fed. Reg. 63, 14563 (Apr. 3, 2025), https://www.federalregister.gov/documents/2025/04/03/2025-05838/restoring-truth-and-sanity-to-american-history [https://perma.cc/6VBH-BCWB]).)

'removed or changed to perpetuate a false reconstruction of American history.'"[25]  The order refers to a historical revisionist movement which "seeks to undermine the remarkable achievements of the United States by casting its founding principles and historical milestones in a negative light."[26]  Mr. Jeanpierre claims the order "opposes narratives that present American history as 'inherently racist, sexist, oppressive, or otherwise irredeemably flawed.'"[27]  It "prohibits 'exhibits or programs that degrade shared American values, divide Americans by race, or promote ideologies inconsistent with Federal law,' and targets changes made to historical presentations since January 1, 2020."[28]  And it "directs the Department of the Interior to ensure that monuments and memorials do not contain content that 'inappropriately disparage Americans past or living (including persons living in colonial times).'"[29]

According to Mr. Jeanpierre, this executive order "effectively establishes a state-sponsored religious doctrine of American historical exceptionalism" and, as a result, is "a direct attack on the foundational tenets of [his] sincerely held religious beliefs."[30]  He alleges the order prevents Mr. Jeanpierre "from exercising his religious autonomy to

---

[25] (*Id.* (quoting Exec. Order).)

[26] (*Id.* (quoting Exec. Order).)

[27] (*Id.* (quoting Exec. Order).)

[28] (*Id.* (quoting Exec. Order).)

[29] (*Id.* (quoting Exec. Order).)

[30] (*Id.* at 7, 11.)

perceive and interpret history according to his religious conscience."[31]  He alleges the

order's "prohibition against depicting American history as 'inherently racist, sexist,

oppressive, or otherwise irredeemably flawed'" impedes his "religious mandate to

identify and confront . . . historical realities" and interferes with his "religious practice of

acknowledging and addressing systemic racism" by "imposing a sanitized historical

narrative that contradicts [his] religious understanding of reality."[32]  The "restrictions on

historical presentations," according to Mr. Jeanpierre, force "compliance with a historical

narrative that [he] religiously believes causes harm to marginalized communities" and

"spiritual suffocation and respiratory distress to [his] religion by restricting the free

breath of historical truth."[33]  Finally, Mr. Jeanpierre alleges the executive order's

imposed historical doctrine compels him "to violate his religious tenants regarding

autonomy, truth-telling, and confrontation of systemic inequity," forcing him "to choose

between adherence to his religious principles and compliance with federal law."[34]

 Mr. Jeanpierre seeks injunctive, declaratory, and monetary relief, as well as

"specific performance."[35]  Specifically, he requests an order permanently enjoining

Executive Order 14253 and declaring it violative of the First Amendment and RFRA—

---

[31] (*Id.* at 10.)

[32] (*Id.* (quoting Exec. Order).)

[33] (*Id.* at 11.)

[34] (*Id.*)

[35] (*Id.* at 5, 20–21.)

and a finding that it constitutes religious violence under international law.[36]  He requests $666 in "compensatory damages" and "attorney's fees and costs."[37]  And he seeks an order requiring President Trump "to surrender one (1) lung" to him as specific performance "for the spiritual suffocation caused by the Executive Order"—or, in the alternative, a specifically orchestrated apology delivered by President Trump before international news media.[38]

## ANALYSIS

Mr. Jeanpierre's complaint is deficient.  He does not state a claim upon which relief may be granted under § 1983 or *Bivens*.  He does not state a claim that the executive order violates RFRA or the First Amendment's religion clauses.  And the United Nations' Universal Declaration of Human Rights does not provide for a private right of action.  For these reasons, the complaint is subject to dismissal.

A.  <u>Section 1983 and *Bivens*</u>

Mr. Jeanpierre fails to state a claim under § 1983 or *Bivens*.  Section 1983 provides a recovery mechanism for violations of federal rights by "a person acting under color of state law."[39]  The statute "is not itself a source of substantive rights, but a

---

[36] (*Id.* at 20.)

[37] (*Id.* at 21.)

[38] (*Id.*)

[39] *See Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (describing § 1983 generally).

method for vindicating federal rights elsewhere conferred."[40]  "It entitles an injured

person to money damages if a *state* official violates his or her constitutional rights."[41]

Because Mr. Jeanpierre sues President Trump, who is a federal official, not a state

official, he fails to state a claim under § 1983.

Although *Bivens* created an implied cause of action against federal officials for

constitutional violations,[42] Mr. Jeanpierre does not state a *Bivens* claim.  He sues

President Trump in his official and individual capacities, but "a *Bivens* claim can be

brought only against federal officials in their individual capacities."[43]  Further, *Bivens*

only allows suits for monetary damages.  *Bivens* does not permit the injunctive and

declaratory relief (and specific performance) Mr. Jeanpierre requests.[44]  Finally,

---

[40] *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To the extent Mr. Jeanpierre relies on the Declaratory Judgment Act, that act involves procedural remedies and (like § 1983) does not confer any "substantive rights" or create a cause of action.  *See Cheyenne & Arapaho Tribes v. First Bank & Tr. Co.*, 560 F. App'x 699, 708 (10th Cir. 2014) (unpublished) (citing *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)).

[41] *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (emphasis added).

[42] *See Bivens*, 403 U.S. at 379.

[43] *Smith*, 561 F.3d at 1099 ("*Bivens* claims cannot be asserted directly against the United States, federal officials in their official capacities, or federal agencies." (internal citations omitted)).

[44] *See Solida v. McKelvey*, 820 F.3d 1090, 1093–94 (9th Cir. 2016) ("[W]e join our sister circuits in holding that relief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action."); *Higazy v. Templeton,* 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (explaining "a *Bivens* claim lies against the federal official in his individual

although Mr. Jeanpierre also seeks monetary damages, *Bivens*' implied remedy for damages only extends to claims brought under the Fourth, Fifth, and Eighth Amendments.[45]  The Supreme Court has "never held that *Bivens* applies to First Amendment claims"[46] like the religious freedom claims asserted here.[47]  Accordingly, the complaint fails to state a claim under *Bivens*.

---

capacity" and, although some "courts have characterized constitutional claims to enjoin federal officials as *Bivens* claims," the *Bivens* Court held "plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations"); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("For people in Bivens' shoes, it is damages or nothing." (citation omitted)).

[45] *See Silva v. United States*, 45 F.4th 1134, 1138–39 (10th Cir. 2022) (explaining Bivens and its early progeny "fashioned a claim for damages in three constitutional contexts" under the Fourth, Fifth, and Eighth Amendments); *see also Sargeant v. Barfield*, 87 F.4th 358, 362–64 (7th Cir. 2023) (providing detailed background of *Bivens* and its progeny).

[46] *Egbert v. Boule*, 596 U.S. 482, 498 (2022) (quoting *Reichle v. Howards*, 566 U.S. 658, 663 (2012)).

[47] Extending *Bivens* to a new constitutional context requires assessing "whether there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 496.  By passing RFRA, which broadly protects religious freedoms, Congress has shown it is better suited to do so.  Accordingly, Mr. Jeanpierre cannot show *Bivens* should extend to his First Amendment claims.  *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) ("[N]either the Supreme Court nor this Court has ever extended *Bivens* to Free Exercise claims.  In view of RFRA's broad protections for religious liberty, we decline to do so here."); *see also Tanzin v. Tanvir*, 592 U.S. 43, 48–52 (2020) (holding "RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities").

B.  RFRA Violation

Mr. Jeanpierre also fails to state a claim under RFRA.  RFRA provides a remedy to redress violations of the right to free exercise under the First Amendment.[48]  The statute bars the federal government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless the government shows the burden is "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[49]  A plaintiff, however, must allege a "substantial" burden on his exercise of religion.[50]  The government substantially burdens religious exercise if it: (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent . . . to engage in conduct contrary to a sincerely held religious belief."[51]

Mr. Jeanpierre fails to assert facts showing the executive order substantially burdens his exercise of religion.  He alleges the order "imposes a sanitized historical

---

[48] *Tanzin*, 592 U.S. at 45.

[49] *United States v. Hardman*, 297 F.3d 1116, 1126 (10th Cir. 2002) (quoting 42 U.S.C. § 2000bb-1(a)–(b)).

[50] *Iglesia Pentecostal Casa De Dios Para Las Naciones, Inc. v. Duke*, 718 F. App'x 646, 650–51 (10th Cir. 2017) (unpublished) (explaining the elements of a RFRA claim).

[51] *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013) (en banc) (citations omitted), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

narrative" that prohibits "depicting American history as 'inherently racist, sexist, oppressive, or otherwise irredeemably flawed.'"[52]  And he broadly alleges this prevents him "from exercising his religious autonomy to perceive and interpret history," impedes his religious practice of identifying and confronting "historical realities" and "acknowledging and addressing systemic racism," forces him to comply with an incorrect historical narrative, compels him "to violate his religious tenants regarding autonomy, truth-telling, and confrontation of systemic inequity," and forces him "to choose between adherence to his religious principles and compliance with federal law."[53]

But the executive order, as described in the complaint, does not demand any conduct from Mr. Jeanpierre or impose any consequence for his religious beliefs.[54]  It orders federal agencies to remove race-centered ideology from the Smithsonian Institution and to restore public monuments, according to President Trump's historical narrative that the country's achievements, principles, and milestones are being undermined and cast in a negative light.[55]  Mr. Jeanpierre does not assert he was made to alter his religious behavior in some way because of this order.  He does not even

---

[52] (Compl., Doc. No. 1 at 10.)

[53] (*Id.* at 10–11.)

[54] *Cf. Burwell*, 573 U.S. at 720 (holding the federal government substantially burdened the plaintiffs' exercise of religion where regulations "demand[ed] that they engage in conduct that seriously violates their religious beliefs" and, if they "d[id] not yield to this demand, the economic consequences w[ould] be severe").

[55] (Compl., Doc. No. 1 at 9.)

allege he visited the Smithsonian or any other monument affected by the order.  And, even if he has, the order demands nothing from him.  It includes no provision requiring or coercing him to accept the executive order's narrative as truth.  Mr. Jeanpierre is free to disagree without any consequence.[56]  Accordingly, the complaint fails to state a claim under RFRA.

## C. First Amendment Violations

Mr. Jeanpierre also fails to state a claim that the executive order violates his religious freedoms under the First Amendment.  Among other things, the First Amendment contains an Establishment Clause and a Free Exercise Clause: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."[57]  Mr. Jeanpierre does not state a claim under either clause.

The Establishment Clause prohibits the government from "mak[ing] a religious observance compulsory," "coerc[ing] anyone to attend church," or forcing individuals "to engage in a formal religious exercise."[58]  The executive order does none of that—it is entirely secular.  Mr. Jeanpierre does not allege he has been forced to attend or engage

---

[56] *Cf. Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 717–18 (1981) (explaining where the government "conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists").

[57] U.S. Const. amend. I.

[58] *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 536–37 (2022) (citing *Zorach v. Clauson*, 343 U.S. 306, 314 (1952) and *Lee v. Weisman*, 505 U.S. 577, 589 (1992)).

in any religious observance—or even that he has been forced to visit the Smithsonian or any other monument affected by the order.

The Free Exercise Clause prohibits the government from burdening "sincere religious practice pursuant to a policy that is not neutral or generally applicable."[59] But Mr. Jeanpierre does not allege the executive order burdens his religious practice—that it prevents him from holding his own beliefs or compels him to alter his personal religious behavior. Moreover, the executive order is neutral and generally applicable. It has no religious objectives.[60] It does not target religion.[61] On its face, it has nothing to do with religion. In effect, Mr. Jeanpierre's free-exercise claim demands that President Trump refrain from implementing a religiously-neutral, historical narrative at the Smithsonian and other monuments that is contrary to the Black Flag's religious understanding of history. The First Amendment has never been interpreted to "require the Government *itself* to behave in ways that the individual believes will further his or her spiritual

---

[59] *Chiles v. Salazar*, 116 F.4th 1178, 1221 (10th Cir. 2024) (citing *Kennedy*, 597 U.S. at 525).

[60] *Id.* at 1222 ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. If the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." (citation modified)).

[61] *Id.* at 1224 (explaining a law is not generally applicable "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions from the law's requirements" or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way" (citation modified)).

development."[62]  For these reasons, the complaint fails to state a claim under either the

Establishment Clause or the Free Exercise Clause.

    D.  <u>Universal Declaration of Human Rights Violation</u>

       Finally, Mr. Jeanpierre fails to state a claim that the executive order violates

Article 18 of the United Nations' Universal Declaration of Human Rights.[63]  The

Universal Declaration of Human Rights is a non-binding declaration that provides no

private rights of action.[64]  Accordingly, this claim is subject to dismissal.

_____

[62] *Bowen v. Roy*, 476 U.S. 693, 699 (1986).  In *Bowen*, the Supreme Court rejected a father's religious objection that the government's use of social security numbers for government benefit programs may harm his daughter's spirit.  *Id.* at 696, 699.  Holding this could not support a free exercise challenge, the Court explained:

> The Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens.  Just as the Government may not insist that [citizens] engage in any set form of religious observance, [citizens] may not demand that the Government join in their chosen religious practices . . . .  The Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can extract from the government.

*Id.* at 699–700 (citation omitted).

[63] (Compl., Doc. No. 1 at 15.)

[64] *See Sosa v. Alvarez–Machain,* 542 U.S. 692, 734 (2004) (explaining that the Universal Declaration is simply a statement of principles and not a treaty or international agreement imposing legal obligations); *Chen v. Ashcroft*, 85 F. App'x 700, 705 (10th Cir. 2004) (unpublished) (explaining "the Universal Declaration of Human Rights is merely a resolution of the United Nations" that is not "binding on the United States" or the Tenth Circuit).

## CONCLUSION

For all these reasons, Mr. Jeanpierre's complaint is subject to dismissal.[65]
Nevertheless, "dismissal of a pro se complaint for failure to state a claim is proper only
where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it
would be futile to give him an opportunity to amend."[66]  Accordingly, Mr. Jeanpierre will
be given an opportunity to amend his complaint, as follows:

1.      Mr. Jeanpierre may file an amended complaint by **November 6, 2025**.
The words "Amended Complaint" should appear in the caption of the document.

2.      Mr. Jeanpierre is advised that an amended complaint will completely
replace all prior versions of the complaint.  Claims which are not realleged in the
amended complaint will be considered abandoned.[67]

3.      For the purpose of allowing Mr. Jeanpierre to file an amended complaint,
and where no government defendant has appeared, the stay entered in this case
pursuant to General Order 25-005 is lifted.

---

[65] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

[66] *Kay*, 500 F.3d at 1217 (citation modified).

[67] *See Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1137
(10th Cir. 2024) ("An amended complaint supersedes a prior complaint and renders it of
no legal effect.  Failing to replead a claim, when given leave to do so, ordinarily
constitutes abandonment when an amended complaint is filed." (citation modified)).

4.      Once filed, the court will screen the amended complaint under 28 U.S.C.

§ 1915(e) and Rule 3-2(b) of the Local Rules of Civil Practice.[68]

5.      Failure to file an amended complaint may result in dismissal of this action.

DATED this 14th day of October, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[68] *See* DUCivR 3-2(b), available at
https://www.utd.uscourts.gov/sites/utd/files/Civil%20Rules%20Final%202024.pdf
[https://perma.cc/CSX4-8M5T].